Boris Treyzon, Esq. (SBN 188893)
*btreyzon@actslaw.com*
Derek Braslow, Esq. (Pro Hac Vice Forthcoming)
*dbraslow@actslaw.com*
Pinar Kermani, Esq. (SBN 355486)
*pkermani@actslaw.com*
Michael Zuzo, Esq. (SBN 356667)
*mzuzo@actslaw.com*
**ABIR COHEN TREYZON SALO, LLP**
16001 Ventura Blvd., Ste. 200
Encino, CA 91436
Telephone: (424) 288-4367 | Fax: (424) 288-4368

Attorneys for Plaintiff Jane NLR Roe,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE NLR ROE<br><br>                     Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); FREDRICK JENKINS, an individual; OFFICER HARDY, an individual; and DOES 1-25, inclusive,<br><br>                  Defendants | Case No.: 4:26-cv-02140<br><br>**COMPLAINT FOR:**<br><br>**1. Sexual Abuse;**<br>**2. Gender Violence;**<br>**3. Sexual Battery;**<br>**4. Intentional Infliction of Emotional Distress;**<br>**5. Negligent Infliction of Emotional Distress;**<br>**6. Battery;**<br>**7. Failure to Protect; and**<br>**8. Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Beginning in approximately June 2023 and continuing through April 2024, FREDRICK JENKINS and OFFICER HARDY ("PERPS"), correctional officers at Federal Correctional Institution – Dublin ("FCI Dublin"), owned and operated by

Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted and harassed Plaintiff JANE NLR ROE ("Plaintiff"), a minimum-security inmate, in violation of federal and state law.

2.    Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice ("DOJ") promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3.    FREDRICK JENKINS, OFFICER HARDY, agents and employees of FCI Dublin, repeatedly subjected Plaintiff to sexual abuse and harassment. In doing so, Defendants violated Plaintiff's rights under the U.S. Constitution and California law. Defendants further committed multiple common law torts against Plaintiff, as recognized under California law.

4.    As a result of Defendants' and FREDRICK JENKINS and OFFICER HARDY's actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

5.    Plaintiff brings this civil action and asserts claims: (1) against FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause; (2) against FREDRICK JENKINS and OFFICER HARDY pursuant to various California common law torts and statutes; and (3) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims committed by Defendants arising under California common law committed within the course and scope of their federal office or employment.

6.    For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## JURISDICTION AND VENUE

7.     Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

8.     The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

10.     Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

## PARTIES

11.     Plaintiff is an individual and citizen of California where she is domiciled. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

12.     Upon information and belief, Defendant FREDRICK JENKINS and OFFICER HARDY are individuals and citizens of California, where they are domiciled. During the relevant period, FREDRICK JENKINS and OFFICER HARDY worked as

3

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

correctional officers ("CO") at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, FREDRICK JENKINS and OFFICER HARDY were acting within the scope of their official employment, or with the BOP's permission and consent.

13.    Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

14.    Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

15.    Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A. PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate**

16.    PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted. [1]

17.    PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

18.    First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

19.    Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

20.    Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator.[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).

[2] 28 C.F.R. § 115.61(a).

[3] *Id.* § 115.61(b)

[4] *Id.* § 115.62

[5] *Id.* § 115.61(e)

[6] *Id.* § 115.22(a); *see also Id.* § 115.71

[7] *Id.* § 115.22(b)

[8] *Id.*

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

21.     Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

22.     The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

23.     The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

24.     Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

25.     Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

---

[9] *Id.* § 115.67(a).

[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)

[11] *Id*. § 115.83(a), (b), (h).

[12] *Id.* § 115.31.

[13] *Id.* § 115.34.

[14] *Id.* § 115.76.

[15] *Id.* § 115.87(a), (d).

[16] *Id.* § 115.89(a), (d).

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

26. Defendants repeatedly violated these PREA regulations.

**B. FREDRICK JENKINS and OFFICER HARDY routinely subjected Plaintiff to sexual abuse and harassment.**

27. Plaintiff began her time at FCI Dublin in approximately 2023.

- During Plaintiff's incarceration at FCI Dublin between approximately June 2023 and April 2024, Correctional Officer FREDRICK JENKINS began singling her out and abusing his authority over her. At all times, Plaintiff was entirely dependent on correctional staff for her housing, safety, movement, and medical care. FREDRICK JENKINS was widely known among inmates for entering cells without justification and removing inmates' undergarments, and he used his position of authority to gain access to Plaintiff while she was vulnerable and unable to protect herself.

- On one occasion while Plaintiff was housed in the Fox Unit (Room 071, bottom tier), Plaintiff had recently suffered an epileptic seizure and was heavily medicated. While she was asleep and medically impaired, FREDRICK JENKINS entered her cell, removed her blanket, and began rubbing her legs in a sexual manner. Plaintiff awoke disoriented and confronted him about what he was doing. FREDRICK JENKINS falsely claimed that he had entered the cell to "inspect a pillow," despite the fact that Plaintiff was clearly present in the bed. He then ordered Plaintiff out of her cell while she was still disoriented and medically vulnerable. When Plaintiff later returned to the cell, she observed that items had been moved, reinforcing that FREDRICK JENKINS had improperly entered and searched her living space.

- On another occasion, Plaintiff experienced another epileptic seizure while incarcerated. Other officers summoned FREDRICK JENKINS to respond. While Plaintiff was incapacitated, unable to resist, and dependent on staff for medical assistance, FREDRICK JENKINS sexually assaulted her by

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

digitally penetrating her for approximately five to ten minutes. Plaintiff was physically restrained during the assault, and her cellmate later informed her that FREDRICK JENKINS had been holding her down while she was incapacitated. Plaintiff was medically vulnerable and unable to protect herself, and FREDRICK JENKINS exploited both his authority and her physical condition to commit the assault.

- FREDRICK JENKINS also engaged in sexual exploitation and retaliation against Plaintiff. While Plaintiff was housed in E Unit on a Saturday evening, FREDRICK JENKINS entered her cell with another officer and ordered Plaintiff to remove her blanket while she was naked. He then shined a flashlight directly onto her body and observed her in a degrading and invasive manner. Plaintiff observed that FREDRICK JENKINS appeared visibly aroused during this encounter. After Plaintiff rejected his advances and refused to comply with his conduct, FREDRICK JENKINS retaliated against her by fabricating allegations that she had exposed herself. As a result of this false report, Plaintiff was placed in the Special Housing Unit ("SHU") for approximately five weeks.

- In addition to the abuse committed by FREDRICK JENKINS, OFFICER HARDY further contributed to the abusive environment at FCI Dublin. OFFICER HARDY, who served as a lieutenant for the SHU, repeatedly ordered Plaintiff to remove articles of clothing under the guise of inspections and questioned Plaintiff about her relationship with FREDRICK JENKINS in an intrusive and coercive manner. These interactions were humiliating and inappropriate and reinforced the hostile and unsafe environment in which Plaintiff was being held.

- The assaults and harassment were not isolated incidents but part of a broader pattern of exploitation of Plaintiff's vulnerability while she was in custody. Plaintiff was entirely dependent on correctional staff for her safety

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

and medical care, particularly because she suffered from epileptic seizures and required assistance when those medical events occurred. FREDRICK JENKINS and OFFICER HARDY abused their authority over Plaintiff and took advantage of the power imbalance inherent in the custodial environment.

- Plaintiff did not report the abuse while incarcerated because she feared retaliation and understood that correctional staff exercised complete authority over her housing, discipline, and safety. The retaliation she experienced after rejecting FREDRICK JENKINS' conduct, including being falsely accused and placed in the SHU for five weeks, reinforced her belief that reporting the abuse would only result in further punishment rather than protection. As a result of the abuse, exploitation, and retaliation she endured, Plaintiff has suffered severe and lasting psychological harm, including anxiety, panic attacks, and post-traumatic stress disorder.

**C. FCI Dublin is known for its culture of tolerating sexual misconduct**

28.    Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, ten BOP employees have been charged by the DOJ with sexual abuse of FCI Dublin inmates. Of those ten, seven have been convicted and three are still awaiting trial. DOJ has not yet finished its investigation; more indictments may follow. Twenty-five total employees were under investigation as of May 2022. [17]

29.    The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.
- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report[18] in the early 2010's, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."
- Warden Ray J. Garcia was sentenced to 70 months prison based on his sexual abuse of multiple FCI Dublin women and his subsequent lies to federal investigators. He forced women to pose for pornographic pictures for him and showed them photographs of his own penis. Warden Garcia also groped women's breasts and buttocks and forced them to strip for him.
- In 2019, an FCI inmate, Victoria Peterson, filed a suit against CO William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.
- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019.

---

[18] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- Between approximately June of 2020 and September of 2020, CO Ross Klinger sexually abused at least three inmates. For example, CO Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse. He gave money and gifts to both the women and their families, and he continued to have sexual intercourse with the women even after they left BOP custody.

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said, "Look, it's hard for you."

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- CO Saucedo watched inmate A.J. in the shower on multiple occasions. CO Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. CO Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by CO Saucedo when he forced her to bend over in front of him.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- Inmate D.S. was forced to engage in oral sex with CO Jeffrey Wilson, a nurse at the BOP. CO Wilson also forced inmate L.A. to show him her breasts. CO Wilson was arrested in June of 2025. The DOJ alleges he also lied to federal agents and brought contraband to his victims.

- A temporary duty medical employee named Jay Alexander (exact name unknown) abused an inmate who sought out medical treatment on her back. He pulled her underwear down and touched her buttocks and in between her inner thighs.

- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.

- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.

- CO Andrew Jones would tell inmate J.C., "Get on your knees" and, "Suck my dick." CO Jones forced at least three inmates to perform oral sex or have sexual intercourse with him, and he threatened them with violence. CO Jones was prosecuted by the DOJ and sentenced to eight years prison.

30.     Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, were reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

---

[19] KTVU Fox 2 Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

31.    In the Federal Bureau of Prison Annual PREA report for calendar year 2021, BOP director Michael Carvajal wrote this summary of staff on inmate sexual misconduct for BOP facilities:

VI. Staff-on-Inmate Incident-Based Assessment: Data for this category is provided in aggregate form in the below table. Staff incidents are received, assessed, and processed by the Office of Internal Affairs. Thus, facility security-level is not noted, and only the year-end totals are provided in this report. During CY2021, there were no substantiated cases in this category. Please note that investigative cases must be closed prior to inclusion in this report. This report encompasses cases that were closed by March 31, 2022.

| Facility | Number of Allegations | Number of Substantiated Cases | Ongoing Investigative Cases |
| --- | --- | --- | --- |
| BOP | 315 | 0 (0%) | 237 |
| Residential | 25 | 0 (0%) | 12 |

32.    Thus, according to Carvajal, for the calendar year 2021 data collection period which encompassed 106 BOP facilities, there were zero substantiated cases of staff on inmate sexual abuse.

33.    Every three years, BOP is required to audit each facility to determine compliance with PREA standards. 28 C.F.R. 115.401(a).

34.    A PREA Audit Report for FCI Dublin was completed and signed on June 14, 2017.

35.    That report found that FCI Dublin met or exceeded PREA standard.

36.    The next final PREA audit report was March 12, 2022.

37.    The 2022 audit report claimed that FCI Dublin was fully compliant with all 45 PREA standards.

38.    The audit was completed after Warden Ray Garcia had been "walked out" of FCI Dublin for his repeated sexual abuse of inmates.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

39.    In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

40.    The Senate Subcommittee also found that the BOP's administrative grievance system was flawed and inadequate. Its investigation uncovered "a backlog of approximately 8,000 internal affairs cases alleging employee misconduct, some of which have been pending for more than five years."[21] The BOP's inability o timely investigate accusations of sexual misconduct left victims without any recourse and allowed perpetrators to avoid accountability, thus encouraging continued misconduct.[22] Even when the BOP did investigate employee misconduct, the Senate report noted that the BOP lacked the resources to properly investigate.[23]

---

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

[21] *Id.* at 4.

[22] *Id.* at 26.

[23] *Id.* at 28.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

41.     The DOJ's investigation of FCI Dublin led to 10 prosecutions, 7 of which resulted in convictions and 3 of which are still pending. Warden Garcia was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. Warden Garcia was sentenced to 5 years and 10 months in prison. CO Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and was sentenced to one year home confinement as a result of his substantial cooperation with the DOJ in providing information about other abusers at FCI Dublin. A federal jury convicted CO Bellhouse of five counts of sexually abusing female inmates; he was sentenced to 5 years prison. Chaplain Highhouse pleaded guilty to sexual abuse of a ward and was sentenced to 7 years prison. CO Chavez pleaded guilty to sexual abuse of a ward and was sentenced to 20 months prison. CO Nakie Nunley pleaded guilty to sexual abuse of a ward and was sentenced to 6 years prison. Multiple federal charges are pending against CO Darrell Smith aka "Dirty Dick" Smith, CO Jeffrey Wilson, and CO Lawrence Gacad. Additionally, in March of 2022, CO Sergio Saucedo and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

42.     In August of 2023, a class action lawsuit was filed against the BOP and FCI Dublin officials. *See California Coalition for Women's Prisoners et al. v. United States et al.*, No. 4:23-cv-4155-YGR (N.D. Cal.). The Honorable Yvonne Gonzalez-Rogers, the presiding judge in that case, appointed a Special Master to oversee Dublin after determining that it was "a dysfunctional mess" wherein the BOP had "proceeded sluggishly with intentional disregard of the inmates' constitutional rights despite being fully apprised of the situation for years." *See id.* (ECF No. 222, at 1).

43.     The BOP appointed a new Deputy Captain at FCI Dublin after the DOJ investigation and first civil lawsuits were filed, and she testified before Judge Gonzalez-Rogers. The Deputy Captain testified that the COs at FCI Dublin lacked training and

knowledge of BOP policies. She further stated that FCI Dublin was not responsive to inmate requests and emails, including allegations of sexual assault.

44.    As a result of the criminal prosecutions against BOP employees, the Senate investigation, and the civil suits against the United States, there was substantial attention on FCI Dublin. The women incarcerated at the facility began to experience substantial retaliation, especially those who had filed PREA complaints and/or tort claims against the United States. Officers would question women as to whether they were "part of that lawsuit," trying to single out the victims who had made accusations.

45.    The COs at FCI Dublin retaliated against the incarcerated victims who made reports by putting them in solitary confinement in the Special Housing Unit (SHU), conducting daily searches of their cells, and placing them on lockdown. Sometimes even the victims' cellmates would be placed in the SHU, in an effort from deterring witnesses from coming forward. Victims also lost privileges such as visitation, phone calls, good time credits, and coveted job placements. Some were transferred to other institutions, in violation of the no-transfer order issued by the district court in the class action suit. One woman was denied her epilepsy medication after she reported that she was raped by CO Smith. The COs at FCI Dublin further attempted to discourage victims from contacting their attorneys by taking their legal mail, denying them legal calls, and forcing them to undergo a strip search after any legal visit. Some women even received explicit or implicit threats of violence against them. One CO even showed up at the home of one of his victim's mothers after the victim reported the abuse.

46.    In April of 2024, the BOP shut down FCI Dublin. Then-Director of the BOP Colette S. Peters acknowledged that the facility was "not meeting expected standards" despite the fact that the BOP had taken "unprecedented steps and provided a tremendous amount to address culture, recruitment and retention, aging infrastructure –

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

and most critical – employee misconduct."[24] The closing came after the release of a report that demonstrated critical levels of black mold and asbestos in the facility, which had resulted in respiratory issues and rashes to the incarcerated women.[25]

47. The BOP further retaliated against the FCI Dublin victims during the process of transferring them to other facilities. During the bus ride from FCI Dublin, COs denied the women the restroom and feminine hygiene products, causing multiple women to soil themselves. At least one CO played painfully loud music with sexually explicit lyrics to make the women uncomfortable. Additionally, many of the women lost their personal property, as the BOP only allowed them to pack one duffle back and the rest of their items were destroyed. And the BOP put arbitrary limits on the number of photographs an inmate could take, for example, leaving them no choice but to abandon treasured photographs of loved ones. When their property was delivered to them at their new facilities, many found that items were missing and/or damaged.

48. Once the women arrived at their new facilities, they faced discriminatory and retaliatory treatment from the BOP staff there, simply because they had arrived from FCI Dublin. BOP guards were explicit about not wanting transfers from FCI Dublin, and they expressed their frustration in myriad ways, including: feeding the women inferior food; refusing to provide them soap, pillows, and clean laundry; denying them jobs; conducting unnecessary searches of them; and making outright threats against them. These guards were resentful that the "Dublin women" had spoken out about abuse and expressed concern that now there would be complaints at their institutions. One guard said, "We don't need Dublin problems here; let's shoot 'em now." Others called the women "snitches" and "rats."

---

[24] Lisa Fernandez, *FCI Dublin Closing, Women Transferred to Prisons Across U.S.*, KUTV (Apr. 16, 2024), https://www.ktvu.com/news/fci-dublin-closing-women-transferred-elsewhere.

[25] *Id.*

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

49.     Even the victims who were no longer in BOP custody faced retaliation for coming forward. Multiple women received threats against them. In one case, a CO who was accused of sexual abuse convinced another CO to call a victim's family member and warn her to stay quiet. Women who were living in residential reentry centers run by the BOP faced discriminatory treatment and increased punishment. Further, most of the victims were on supervised release. Thus, the threat of being sent back to BOP custody for a violation hung over the victims' heads at all times. One plaintiff who was on supervised release was sent back into BOP custody after testing positive for an opioid, despite having received prior permission to take pain medication due to her history of cancer and recent back surgery.

50.     On June 5, 2024, the Special Master issued her first report regarding FCI Dublin, finding that it had "a cascade of failure in critical institutional systems and areas," and focusing in particular on the prison's significant problems with inadequate mental health treatment, discipline and due process, and inadequate PREA protocol.[26] The Special Master stated that it was "unconscionable that any correctional agency could allow incarcerated individuals under their control and responsibility to be subject to the conditions that existed at FCI Dublin for such an extended period of time without correction."[27]

51.     In December of 2024, the United States entered into a landmark settlement in which $116 million was paid to 104 survivors of sexual abuse at Dublin.[28] That settlement, however, did not include every woman who was abused at FCI Dublin.

---

[26] Wendy Still, First Report of the Special Master Pursuant to the Court's Order of March 26, 2024 (Jun. 5, 2024), at 28; https://s3.documentcloud.org/documents/25030691/fci-dublin-special-master-report.pdf.

[27] *Id.* at 13.

[28] Lisa Fernandez, *Bureau of Prisons to pay $116M to more than 100 FCI Dublin sex assault survivors*, KTVU (Dec. 17, 2024); https://www.ktvu.com/news/bureau-prisons-pay-115m-more-than-100-fci-dublin-sex-assault-survivors.

18

52. Many victims did not come forward before the settlement due to their fear of retaliation. These victims saw what happened to the women who filed lawsuits and did not want to receive similar treatment. They believed that filing tort claims or administrative grievances would not only put them at risk of harm, but that they would also be futile due to the BOP's consistent failure to respond to allegations of PREA violations. After the settlement was publicized, however, many more women felt safe coming forward, finally believing that the justice system might actually vindicate them.

53. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, servant, and employee of the remaining Defendants, and at all times herein mentioned, each was acting within the time, place and scope of employment of other Defendants. At all material times, all of the Defendants aided, abetted, authorized, and ratified all of the actions of all of the other Defendants. Plaintiff is informed and believes, and based thereupon alleges, that at all material times, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

## **FTCA ADMINISTRATIVE EXHAUSTION**

54. Plaintiff has exhausted these claims against the United States under the FTCA.

55. Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

56. The BOP received her administrative claim on February 6, 2026.

57. Under the FTCA (28 U.S.C. § 2675(a)), if a federal agency fails to issue a final disposition on a claim within six months, a Plaintiff may consider this a final denial of her claim. On February 27, 2026, the Federal Bureau of Prisons issued a written final denial of Plaintiff's administrative claim. Accordingly, Plaintiff has satisfied the administrative exhaustion requirements of the FTCA and is entitled to bring this action in this Court.

## CLAIMS FOR RELIEF

## CLAIM ONE

### EIGHTH AMENDMENT, CRUEL AND UNUSUAL

### PUNISHMENT – SEXAUL ABUSE

**(Against FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive)**

58. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

59. Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive.

60. At all material times, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

61. FREDRICK JENKINS and OFFICER HARDY violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as an inmate at FCI Dublin.

62. FREDRICK JENKINS and OFFICER HARDY sexual abuse of Plaintiff occurred under coercive circumstances.

63. By intentionally subjecting Plaintiff to abusive sexual acts, FREDRICK JENKINS and OFFICER HARDY acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification. The inhumane

conditions of confinement caused by PERP's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

64.    FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

65.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

66.    Plaintiff makes these allegations against DOES 1-25, inclusive.

### CLAIM TWO

### GENDER VIOLENCE (Civ. Code § 52.4)

### (Against FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, Inclusive)

67.    Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

68.    Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25.

69.    Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

70.    FREDRICK JENKINS and OFFICER HARDY discriminated against Plaintiff based on her female gender when he repeatedly sexually abused her, by subjecting her to sexual acts under the coercive conditions that were present between them.

71.    FREDRICK JENKINS and OFFICER HARDY actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial

conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

72.    By repeatedly subjecting Plaintiff to abusive and intrusive sexual acts, FREDRICK JENKINS and OFFICER HARDY caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

73.    FREDRICK JENKINS and OFFICER HARDY acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

74.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

75.    These allegations are asserted against DOES 1-25, inclusive.

76.    Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM THREE

### SEXUAL BATTERY (FTCA, Civ. Code § 1708.5)

### (Against UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, Inclusive)

77.    Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

78.    Plaintiff brings this claim for sexual assault under FTCA and California Civil Code § 1708.5 against UNITED STATES and PERPS. The UNITED STATES ratified the conduct of FREDRICK JENKINS and OFFICER HARDY.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

79.    FREDRICK JENKINS and OFFICER HARDY violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

80.    FREDRICK JENKINS and OFFICER HARDY sexual abuse of Plaintiff occurred under coercive circumstances.

81.    For these reasons, FREDRICK JENKINS and OFFICER HARDY sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

82.    Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, FREDRICK JENKINS and OFFICER HARDY must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

83.    Plaintiff did not and could not consent to the touching and demands.

84.    By intentionally subjecting Plaintiff to sexual acts, FREDRICK JENKINS and OFFICER HARDY acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

85.    FREDRICK JENKINS and OFFICER HARDY actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

86.    By repeatedly subjecting Plaintiff to sexual acts, FREDRICK JENKINS and OFFICER HARDY caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

87.    FREDRICK JENKINS and OFFICER HARDY acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

88.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

89.    All these allegations are asserted against DOES 1-25, inclusive.

## CLAIM FOUR

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (FTCA, California common law)

## (Against UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, Inclusive)

90.    Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

91.    Plaintiff brings this claim for intentional infliction of emotional distress under FTCA / California common law against UNITED STATES, FREDRICK JENKINS, and OFFICER HARDY. The UNITED STATES ratified the conduct of FREDRICK JENKINS and OFFICER HARDY.

92.    FREDRICK JENKINS and OFFICER HARDY engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual abuse while she was incarcerated as an inmate in his employer's custody. FREDRICK JENKINS and OFFICER HARDY abused his authority over Plaintiff and his power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

93.    Plaintiff did not and could not consent to the touching by FREDRICK JENKINS and OFFICER HARDY.

94.    FREDRICK JENKINS and OFFICER HARDY sexual abuse and demands caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

95.    FREDRICK JENKINS and OFFICER HARDY intended to cause Plaintiff this emotional distress because they knew that emotional distress was certain to result from her sexual manipulation and violent abuse of an inmate.

96.    FREDRICK JENKINS and OFFICER HARDY actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

97.    FREDRICK JENKINS and OFFICER HARDY acted with malice and oppression, entitling Plaintiff to punitive damages.

98.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

99.    These allegations are asserted against DOES 1-25, inclusive.

## CLAIM FIVE

### NEGLIGENT INFLITION OF EMOTIONAL DISTRESS

**(FTCA, California common law)**

**(Against UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, Inclusive)**

100.    Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

101.    Plaintiff brings this claim against the UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, under the FTCA based on the actions and/or omissions of UNITED STATES, FREDRICK JENKINS, OFFICER

HARDY, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in their capacity as employees of the BOP and acting within the scope of their employment, with United States' permission and consent.

102. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

103. **Duty**. UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, had a special, heightened, custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

104. **Breach of duty—inadequate supervision**. UNITED STATES and DOES 1-25, inclusive, failed to supervise and operate FCI Dublin in a manner that would have prevented FREDRICK JENKINS and OFFICER HARDY ongoing sexual abuse of Plaintiff.

105. The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

106. FREDRICK JENKINS and OFFICER HARDY sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States and DOES 1-25.

107. **Injuries and relief sought**. UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

108. Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

109. By reason of the UNITED STATES, FREDRICK JENKINS and OFFICER HARDY's negligent infliction of emotional distress, Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

110. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

111. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SIX

### BATTERY (FTCA, California common law)

### (Against UNITED STATES, FREDRICK JENKINS, and OFFICER HARDY, and DOES 1-25, Inclusive)

112. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

113. Plaintiff brings this claim for battery under FTCA and California common law against UNITED STATES, FREDRICK JENKINS, and OFFICER HARDY. The UNITED STATES ratified the conduct of FREDRICK JENKINS and OFFICER HARDY.

114. FREDRICK JENKINS and OFFICER HARDY committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

27

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

115.   FREDRICK JENKINS and OFFICER HARDY sexual abuse of Plaintiff occurred under coercive circumstances.

116.   For these reasons, FREDRICK JENKINS and OFFICER HARDY sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

117.   Given the deeply offensive nature of these acts and lack of any possible penological justification for these acts, FREDRICK JENKINS and OFFICER HARDY must have subjected Plaintiff to these acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

118.   By intentionally subjecting Plaintiff to sexual abuse, FREDRICK JENKINS and OFFICER HARDY acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

119.   FREDRICK JENKINS and OFFICER HARDY actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse and physical violence, that they could not have been making a policy judgment in their decision to abuse Plaintiff.

120.   By repeatedly subjecting Plaintiff to sexual abuse, FREDRICK JENKINS and OFFICER HARDY caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

121.   FREDRICK JENKINS and OFFICER HARDY acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

122.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (only against individuals).

123.   These allegations are asserted against DOES 1-25, inclusive.

## CLAM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

## (Against FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, Inclusive)

124.   Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

125.   Plaintiff brings this claim against FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

126.   At all material times, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

127.   FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse by FREDRICK JENKINS and OFFICER HARDY, by acting in conscious disregard of that known risk.

128.   Prior to Plaintiff's sexual abuse, DOES 1-25 had knowledge of prior abuses occurring at FCI Dublin and did nothing to stop it, including failing to conduct an investigation, among other things. DOES 1-25 had a legal duty to investigate complaints of abuse. Despite knowledge of abuse, DOES 1-25 did not investigate any of the complaints. This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff. DOES 1-25 consciously allowed inmates, including Plaintiff, to be abused.

129. Based on his position and behavior in the prison, DOES 1-25 knew or should have known that FREDRICK JENKINS and OFFICER HARDY was abusing Plaintiff.

130. DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from FREDRICK JENKINS and OFFICER HARDY, in violation of 28 C.F.R. § 115.62.

131. FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

132. FREDRICK JENKINS, OFFICER HARDY,and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

133. FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25 purposefully denied Plaintiff protection from the known and substantial risk of serious harm of sexual abuse.

134. FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25's inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

135. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM EIGHT

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

**NEGLIGENCE (FTCA, California common law)**

**(Against the UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, Inclusive)**

136.   Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

137.   Plaintiff brings this claim against the United States, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25 under the FTCA and California common law based on the actions and/or omissions of United States, FREDRICK JENKINS, OFFICER HARDY,and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

138.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

139.   **Duty**. UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

140.   The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

141.   Alternatively, UNITED STATES, FREDRICK JENKINS, OFFICER HARDY, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

142.   FREDRICK JENKINS and OFFICER HARDY's sexual abuse of Plaintiff was reasonably foreseeable to the United States because FREDRICK JENKINS and OFFICER HARDY conduct made it obvious they were sexually and physically abusing Plaintiff.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

143. **Breach of duty—inadequate supervision**. The United States and DOES 1-25 failed to supervise and operate FCI Dublin in a manner that would have prevented FREDRICK JENKINS and OFFICER HARDY ongoing sexual abuse of Plaintiff.

144. The United States did not take reasonable, available measures to abate the risk of abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

145. FREDRICK JENKINS and OFFICER HARDY sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States and DOES 1-25.

146. **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

147. Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Nominal damages in an amount to be determined at trial;

2. Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3. Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights (except against United States);

4. An award to Plaintiff of reasonable costs; and

5. An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6. Such other and further relief as the Court may deem fit and proper.

Dated: March 10, 2026                           **ABIR COHEN TREYZON SALO, LLP**


                                           **By:** /s/ Michael Zuzo
                                                Boris Treyzon, Esq.
                                                Derek Braslow, Esq.
                                                Pinar Kermani, Esq.
                                                Michael Zuzo, Esq.

                                           *Attorneys for Plaintiff Jane NLR Roe*

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL